IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LORENZO CHAVEZ RASCON,<br><br>Petitioner,<br><br>v.<br><br>KRISTI NOEM, et al.,<br><br>Respondents. | **MEMORANDUM DECISION AND ORDER GRANTING HABEAS CORPUS PETITION**<br><br>Case No. 2:26-cv-00161-RJS<br><br>District Judge Robert J. Shelby |

Before the court is Plaintiff Lorenzo Chavez Rascon's Petition for Habeas Corpus.[1] Chavez asks the court to "declare that Petitioner is in custody in violation of the Constitution and laws of the United States," and order the government to immediately release him from immigration detention.[2]  After reviewing the facts and arguments presented, the court finds that Chavez is being detained in violation of U.S. law.  Accordingly, the court GRANTS the Petition for Habeas Corpus[3] and ORDERS the immediate release of Chavez.

**BACKGROUND**[4]

Chavez entered the United States in November 2017 as a minor and presented himself (as

---

[1] Dkt. 9, *Amended Verified Petition for Habeas Corpus and Declaratory Action-Immigration Habeas Case* (*Amended Petition*); *see also* Dkt. 1, *Verified Petition for Habeas Corpus and Declaratory Action-Immigration Habeas Case* (*Original Petition*).

[2] *Amended Petition* at 35.

[3] *Id*.

[4] The following facts are drawn from the Original Petition, the Amended Petition, Motion for TRO, Response to Order to Show Cause, and from representations made by counsel at the hearing on March 9, 2026.  *See Original Petition*; *Amended Petition*; Dkt. 10, *Emergency Motion for Temporary Restraining Order* (*Motion*); Dkt. 17, *Minute Entry*; Dkt. 19, *Response to Order to Show Cause* (*Response*).  The facts discussed in this section are not disputed by the parties in their Response and Reply briefs.

1

part of his family) to Customs and Border Patrol at the border with an asylum claim.[5]  On

November 27, 2017, Chavez was charged with removability, and two days later, he was granted

parole and released pursuant to 8 U.S.C. § 1182(d)(5).[6]  As his asylum claim continued to be

litigated in immigration court, Chavez applied for a U-Visa, a type of temporary visa available to

certain undocumented aliens within the United States who cooperate with law enforcement.[7]  On

February 7, 2026, United States Citizenship and Immigration Services (USCIS) determined his

petition for a U-Visa to be bona fide.[8]  The bona fide determination (BFD) notice included a

designation of deferred action status, which places a discretionary deferral on adverse

immigration action against Chavez pending resolution of his U-Visa application.[9]  When his U-

Visa petition was determined to be bona fide, Chavez was in the appeals process challenging a

removal order against him.[10]

On February 23, 2026, Chavez was arrested by Utah state authorities in connection with a

suspected drug sale.[11]  Chavez was the driver of a vehicle transporting two other individuals to a

pre-arranged drug transaction.[12]  The three individuals were arrested at the scene, and a firearm

was discovered inside the vehicle with Chavez.[13]  However, the narcotics involved in the

---

[5] *Response* at 3.

[6] *Id.*

[7] *See id.* at 4; *Amended Petition* ¶ 47; *see also* 8 U.S.C. § 1101(a)(15)(U) (identifying noncitizens who qualify for a U-Visa).

[8] Dkt. 9-2, *Notice of Action*; *see also* 8 C.F.R. § 214.14(d)(2) ("All eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list . . . .  USCIS will grant deferred action or parole to U-1 petitioners and qualifying family members while the U-1 petitioners are on the waiting list.  USCIS, in its discretion, may authorize employment for such petitioners and qualifying family members.").

[9] *Response* at 4.

[10] *Id.* at 3.

[11] *Amended Petition* ¶¶ 43, 46; *Minute Entry*.

[12] *Response* at 4–5.

[13] *Id.* at 5.

suspected sale were later determined to be dried brown beans.[14]  While in State custody at Salt Lake County Jail, Immigration and Customs Enforcement (ICE) issued an immigration detainer for the jail to continue detaining Chavez so ICE could take custody in the event Utah was not otherwise going to detain him.[15]

Chavez filed his Original Habeas Corpus Petition on February 25, 2026, challenging the immigration detainer.[16]  While the court was reviewing the Original Petition, the State dismissed the drug possession and prohibited dangerous weapon conduct charges against Chaves,[17] and ICE took custody of Chavez from the Salt Lake County Jail.[18]

On March 3, 2026, Chavez filed an Amended Habeas Corpus Petition and Emergency Motion for a Temporary Restraining Order.[19]  The court heard from counsel for both parties at a Status and Scheduling Conference hearing on March 9, 2026 and issued an oral Temporary Restraining Order enjoining the government from removing Chavez pending this proceeding, and ordering the government to disclose Chavez's location, enable communication between Chavez and his counsel, and show cause why the Amended Petition for Habeas Corpus should not be granted.[20]  On March 11, 2026, the court issued a written ruling memorializing the oral order.[21]  On March 12, 2026, the government filed a Response to the Order to Show Cause.[22]

---

[14] *Amended Petition* ¶ 46.

[15] *Amended Petition* ¶ 2; *Response* at 5; *see also Original Petition* ¶ 35.

[16] *Original Petition* ¶ 4.

[17] *Response* at 5.

[18] *Amended Petition* ¶¶ 45, 48; *Minute Entry*.

[19] *Amended Petition*; *Motion*.

[20] *Minute Entry*.

[21] Dkt. 18, *Memorandum Decision and Order Granting in Part Denying in Part Motion for Temporary Restraining Order*.

[22] *Response*.

Chavez filed a Reply to the government's response the following day.[23]  Chavez remains in ICE detention in San Bernardino, CA.[24]

## JURISDICTION

The court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it is a habeas corpus petition brought under 28 U.S.C. § 2241.  The court has personal jurisdiction over the parties because Chavez was detained in Utah when the Original Petition was filed.[25]

## ANALYSIS

Chavez contends his deferred action status has not been revoked, and he is therefore entitled to immediate release.[26]  Alternatively, if the deferred action status was revoked, Chavez asserts that he would not be subject to mandatory detention under 8 U.S.C. § 1225(b) as the government contends, but instead subject to discretionary detention under 8 U.S.C. 1226(a) and entitled to a bond hearing.[27]  After closely reviewing arguments from both parties, the court concludes that Chavez's positions are correct.

### I.      Chavez's Deferred Action Status Was Not Revoked

Chavez's deferred action status has not been revoked by USCIS.  Deferred action is a temporary designation made by the Department of Homeland Security (DHS) providing "an informal administrative stay of deportation having no effect on an alien's adjudication as

---

[23] Dkt. 21, *Reply to the Respondents' Response to the Order to Show Cause* (*Reply*).

[24] *Minute Entry*.

[25] *Original Petition* ¶ 16; *see Santillanes v. U.S. Parole Com'n*, 754 F.2d 887, 8898 (10th Cir. 1985) ("[J]urisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change.")

[26] *Reply* at 2–4.

[27] *Id.* at 7–10.

deportable but potentially leading to an extended stay in this country."[28]  The designation is an act of prosecutorial discretion not to pursue removal against an individual with the status.[29]  As such, deferred action does not constitute admission to the United States or otherwise lawful status.

### A.  No Affirmative Steps to Revoke Deferred Action Have Been Taken

Deferred action was granted to Chavez upon his BFD Notice on his petition for a U-Visa.[30]  Federal regulation provides, "USCIS will grant deferred action or parole to [eligible] U-1 petitioners" who, "due solely to the [annual] cap, are not granted U-1 nonimmigrant status."[31]  Deferred action was granted to Chavez as the regulation mandates.

The government does not identify any formal steps have been taken to revoke Chavez's deferred action status, but rather represents "steps to affirmatively revoke it are expected to occur."[32]  Chavez was arrested over three weeks ago, and he has been in ICE custody for over two weeks.  More than sufficient time has passed for the government to take action to revoke Chavez's deferred action status, or at a minimum commence a formal review.  Yet the government provides evidence of neither.  Allowing the government to keep Chavez in detention indefinitely by not taking any reviewable steps to revoke his deferred action status raises serious Fifth Amendment Due Process concerns.[33]

### B.  No Basis for De Facto Revocation

---

[28] *Velasco-Gutierrez v. Crossland*, 732 F.2d 792, 794 (10th Cir. 1984) (citation modified).

[29] *Id.*

[30] *Response* at 4.

[31] 8 C.F.R. § 214.14(d)(2).

[32] *Response* at 10.

[33] *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (stating "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem" under the Fifth Amendment).

The government argues Chavez's "deferred action was de facto revoked on public safety grounds upon Petitioner's arrest."[34]  This argument is unpersuasive.  The government does not cite any statue or other authority holding that an arrest automatically terminates deferred action status.[35]  The principle holds that even for discretionary actions, "[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."[36]  Here, federal regulation clearly provides that Chavez was entitled to receive deferred action on account of his bona fide U-Visa petition determination.[37]  Absent any authority stating that an arrest has the effect of terminating such deferred action, the court can only conclude that such events do not have that effect.

### C.  Public Safety Concerns Do Not Provide for Detention Here.

While the government does not claim DHS has taken any affirmative steps to revoke Chavez's deferred action, it contends that it expects to do so on public safety grounds.[38]  The government cites the USCIS Policy Manual, which provides guidance on the BFD Process for U-Visas.[39]  It provides that USCIS may choose not to exercise its discretion to grant a BFD and deferred action if "a petitioner appears to pose a risk to national security or public safety.  For example, where a principal petitioner or qualifying family member has been convicted of or arrested for . . . [o]ffenses involving firearms . . . and [m]anufacturing, distributing, or selling of

---

[34] *Response* at 10.

[35] *See id.*

[36] *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (considering APA challenge to actions taken by Bureau of Indian Affairs).

[37] *See* 8 C.F.R. § 214.14(d)(2).

[38] *Response* at 10.

[39] *Id.* (citing USCIS Policy Manual, Vol. 3, Pt. C, Ch. 5, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 [https://perma.cc/CSG5-R57T]).

drugs or narcotics."[40]  While the guidance does provide that USCIS may elect not to exercise its discretion to grant a BFD for these reasons, the manual says nothing of revoking a BFD and deferred action for those reasons once the status is granted.  The guidance states only "USCIS reserves the right to revoke the BFD . . . and terminate the grant of deferred action at any time if it determines the BFD [Employment Authorization Document (EAD)] or favorable exercise of discretion are no longer warranted, or the prior BFD EAD and deferred action were granted in error."[41]  The government presented neither justification here, at least because DHS has apparently not, as of now, reviewed Chavez's deferred action status.[42]

   *D.  Detention While Chavez Has Deferred Action Status Requires Immediate Release*

Because Chavez still possesses deferred action status, his detention appears to be indefinite and therefore requires release.  Chavez is currently being held in detention pursuant to 8 U.S.C. § 1226(a), which provides the Attorney General "may continue to detain the arrested alien" pending a decision on removal.[43]  In *Zadvydas v. Davis*,[44] the Supreme Court considered indefinite detention in an immigration context and found a "serious constitutional problem aris[es] out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty."[45]  While the Court in *Zadvydas* considered the legality of indefinite detention pursuant to a different statute—8 U.S.C. § 1231(a)(6), as opposed to deferred action and discretionary detention under 8 U.S.C. § 1226(a)—the similar discretionary

---

[40] USCIS Policy Manual, Vol. 3, Pt. C, Ch. 5.

[41] *Id.*

[42] *See Response* at 10 ("steps to affirmatively revoke it are expected to occur.").

[43] 8 U.S.C. 1226(a)(1).  The court discusses the application of 8 U.S.C. § 1226 *infra* Section II.

[44] 533 U.S. 678 (2001).

[45] *Id.* at 692.

language of the statutes makes the constitutional concerns applicable here.[46]  The Court there held on constitutional avoidance grounds that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."[47]  Here, removal is no longer foreseeable while Chavez is in a deferred action status awaiting final adjudication of his bona fide U-Visa petition.  Because there is currently a severe backlog of U-Visa petitions,[48] it is likely Chavez will remain in deferred action for many years to come.  His removal during this period is not imminent or foreseeable, since deferred action means his case is not being actively prosecuted while awaiting his U-Visa.[49]  Chavez therefore is being held in indefinite detention not authorized by law, and he is consequently entitled to immediate release.

**II.      Chavez's Detention Is Governed By 8 U.S.C § 1226(a)**

Even if Chavez's deferred action status was revoked, Chavez would be subject to discretionary detention and entitled to a bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a).  The government maintains it is required to detain Chavez in mandatory custody pursuant to 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) and/or § 1225(b)(2)(A).[50]  Chavez contests this conclusion, contending that Chavez's detention should be governed by 8 U.S.C. § 1226(a), which would allow for discretionary detention and a bond hearing.[51]  Prior to 2025, it was generally understood that  DHS would apply 8 U.S.C. § 1225 only toward aliens detained at or

---

[46] *Compare* 8 U.S.C. § 1231(a)(6) (["an alien ordered removed . . . may be detained beyond the removal period, and, if released, shall be subject to [certain] terms of supervision"]), *with id.* § 1226(a) (["the Attorney General . . . may release the alien on [bond or conditional parole]"]).

[47] *Zadvydas*, 533 U.S.  at 699.

[48] *See Minute Entry* (counsel for the government represented it is currently up to ten years wait time to review.).

[49] *See* 8 C.F.R. § 214.14(d)(2).

[50] *Response* at 9.

[51] *Reply* at 7–8.

8

near the border, while 8 U.S.C. § 1226 applies to aliens detained in the interior of the country.[52]

However, in July 2025, DHS released interim guidance stating it had "revisited its legal position

on detention and release authorities," and "it is the position of DHS that such aliens are subject to

detention under INA § 235(b) [8 U.S.C. § 1225(b)] and may not be released from ICE

custody."[53] It goes on to limit custody determination and release on bond only to "aliens

admitted to the United States."[54] Chavez originally entered the United States in 2017 at the

southern border and was released on parole without a determination of admittance.[55] However,

he was detained in Salt Lake City in 2026 far from the border.[56]

This court recently decided a habeas petition filed under similar circumstances: *Tanchez*

*v. Noem*,[57] in which Judge Campbell considered whether the detention of the petitioner there—

who was also arrested in Utah two years after his entry at the southern border—was governed by

either provision.[58] The court carefully considered the text of the two statutes, the legislative

history, past DHS practices, Supreme Court Interpretations of related statutes, and constitutional

avoidance of Fifth Amendment concerns of indefinite civil detention before concluding 8 U.S.C.

§ 1226 applied to the petitioner's detention.[59]

This court finds the reasoning in *Tanchez* persuasive and compelling, and it adopts the

same conclusion that Chavez's arrest and subsequent detention is governed by 8 U.S.C.

---

[52] *See Tanchez v. Noem* , No. 2:25-cv-01150, 2026 WL 125184 at *6 (D. Utah Jan. 16, 2026).

[53] *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA Doc. No. 25071607 (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission [https://perma.cc/5GKM-JYGX].

[54] *Id.*

[55] *Response* at 3.

[56] *Id.* at 4.

[57] No. 2:25-cv-01150, 2026 WL 125184 (D. Utah Jan. 16, 2026).

[58] *Id.* at *17.

[59] *Id.* at *10, *20, *24, *26, *28.

§ 1226(a) since he was arrested far from the border and years after arriving in the United States. In fact, the conclusion is even more persuasive here given he was not just paroled at the border, but he was also granted deferred action status under a bona fide U-Visa petition, allowing him to live in the United States while awaiting his U-Visa.

Because 8 U.S.C. § 1226(a) subjects Chavez to discretionary detention,[60] he would be entitled to a bond hearing if not for his current deferred action status entitling him to immediate release.

## CONCLUSION

For the reasons explained above, the court GRANTS Chavez's Amended Habeas Petition[61] and ORDERS as follows:

1.    The court orders the government to immediately release Petitioner in Salt Lake City, Utah, with all items and effects from Salt Lake County Jail held on his behalf.

2.    The court dissolves the Temporary Restraining Order.[62]

The Clerk of Court is directed to close the case.

SO ORDERED this 23rd Day of March, 2026, at 10:30 A.M.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge

---

[60] Though the government does not argue Chavez may also be detained pursuant the mandatory detention provisions of 8 U.S.C. § 1226(c), those provisions are inapplicable here because Chavez was not convicted of a crime, nor was he arrested for a crime listed in 8 U.S.C. § 1226(c)(1)(E)(ii).

[61] Dkt. 9.

[62] Dkt. 18.